# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| STANLEY SCHEINMAN,<br>        Plaintiff, | No. 3:18-cv-1551 (SRU) |
| v. | |
| GLASS & BRAUS LLC, et al.,<br>        Defendants. | |

## RULING ON MOTION TO DISMISS

Stanley Scheinman, proceeding *pro se*, brought this lawsuit against Glass & Braus LLC and Safeguard Property Management (collectively, "Defendants"), challenging Defendants' communications and actions in connection with their efforts to collect on a mortgage debt. He asserts violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, and various Connecticut statutes.

Currently before the court is Glass & Braus's motion to dismiss the amended complaint for failure to state a claim (doc. no. 87). For the reasons that follow, the motion is **granted** in part and **denied** in part.

## I.    Standard of Review

### A.  Rule 12(b)(6)

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the

material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiffs, and decide whether it is plausible that plaintiffs have a valid claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

Under *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 555, 570; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").  The plausibility standard set forth in *Twombly* and *Iqbal* obligates the plaintiff to "provide the grounds of his entitlement to relief" through more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted).  Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (internal quotation marks omitted).

## II.  Background

### A.  Factual Allegations[1]

A state marshal served on Scheinman a letter from Glass & Braus dated June 24, 2018, along with a Connecticut Superior Court summons and complaint.[2]  *See* Am. Compl., Doc. No. 77, at ¶ 19.  That letter, which is appended to the complaint as Exhibit 1, stated that Glass &

---

[1] The facts are drawn from the complaint, and for purposes of the present motion, I assume them to be true and draw all reasonable inferences in Scheinman's favor.  *See Ashcroft,* 556 U.S. at 678–79.
[2] The complaint and summons, which had a return date of July 17, 2018, were never filed with the Superior Court.  *See id*. at ¶ 19.

Braus was retained by U.S. Bank National Association ("U.S. Bank") to collect an overdue debt

in the amount of $624,847.20 pertaining to a property located at 43 Bridge Road in Weston,

Connecticut.  *See id*. at 66–67.  The letter notified Scheinman that Glass & Braus would assume

the debt is valid if he did not dispute its validity in writing within 30 days of receipt of the letter.

*Id*. at 66.

In response, Scheinman timely disputed the debt and requested "validation and

verification" of the claimed debt.[3]  *Id*. at ¶ 19.  No "compliant" response was received.  *Id*.

On August 10, 2018, a state marshal served Scheinman with another letter from Glass &

Braus and with a second Connecticut Superior Court summons and complaint.[4]  *Id*. at ¶ 20.  That

letter, appended to the complaint as Exhibit 2, reads: "I understand that you feel you did not get

adequate notice that this firm is a debt collector . . . If you have any questions regarding whether

or not this firm is [a] debt collector, please feel free to contact me."  *See id*. at 68–69.  The letter

reiterated that Glass & Braus was attempting to collect a debt.  *See id*.

Scheinman once again disputed the debt and renewed his demands for "verification and

validation."  *Id*. at ¶ 20; *see also id*. at 76–77 (letter dated August 14, 2018 from Scheinman to

Glass & Braus).  A "compliant" response was not received.  *Id*. at ¶ 20.

On September 7, 2018, Glass & Braus called and wrote Scheinman, advising him that it

had been retained as an attorney by a mortgage servicer, Select Portfolio Servicing ("SPS"), to

collect the alleged debt without supplying evidence of SPS's authority to collect such debt.[5]  *Id*.

---

[3] Appended to the complaint as Exhibit 4 is a letter from Scheinman dated June 30, 2018, requesting an engagement letter as confirmation that U.S. Bank had retained Glass & Braus to represent it.  *See id*. at 72–73.  Also appended to the complaint as Exhibit 5 is a letter dated July 10, 2018 from Scheinman to Glass & Braus, disputing the debt and again demanding "validation and verification of the existence and validity of such claimed indebtedness."  *Id*. at 74.  It additionally requested "the identification and details of the '[o]riginal [c]reditor.'"  *Id*.
[4] The complaint and summons, which had a return date of August 28, 2018, were never filed with the court. *Id*. at ¶ 20.
[5] Appended to the complaint as Exhibit 7 is a letter to Scheinman from Glass & Braus, setting forth the breakdown of the alleged debt and providing details of the original creditor, Washington Mutual Bank.  *Id*. at 79–80.

at ¶ 22.  On the call, Scheinman reminded Glass & Braus of his "demands for validation and verification," and Glass & Braus indicated that it would provide the requested evidence within the week.  *Id*.  Glass & Braus, however, failed to respond accordingly.  *See id*.

According to the complaint, Glass & Braus has yet to produce evidence to support its claim that it is retained by SPS or that SPS has the authority to collect the debt.  *See id*. at  ¶ 17.

### 1.  *Registration Form 2 and Notices of Lis Pendens*

On June 24, 2018 and August 7, 2018—around the time the first and second complaints and summonses were served—Glass & Braus filed "Registration Form 2" with the Town of Weston Court Clerk.[6]  *See id.* at ¶ 38; *see also id.* at 29 (completed form).  The form, attached to the complaint as Exhibits C and D,  is "[t]o be filed by a person in whom title to a residential property becomes vested through a foreclosure action" in accordance with Conn. Gen. Stat. § 7-148ii.  *Id*. at 28, 29.  The top of the form reads "Notice to Municipality: Registration of Property Acquired Through Foreclosure OR Notice to Municipality: Updated Registration for Property Acquired Through Foreclosure."  *Id*.

On the partially filled-out form, 43 Bridge Road is listed as the property location and U.S. Bank is listed as the name of the registrant in whom title has vested.  *Id*. at 29.  The address and telephone number of U.S. Bank is also written in.  *Id*.   No foreclosure lawsuit implicating the property, however, was ongoing at the time.  *See id.* at ¶ 38.

---

The letter further states that "[w]e have previously provided you with a copy of the note, mortgage and assignment." *Id*. at 80.

[6] Conn. Gen. Stat. § 7-148ii reads, in relevant part:

Any person in whom title to a residential property has vested on or after October 1, 2011, through a foreclosure action pursuant to sections 49-16 to 49-21, inclusive, or 49-26, shall register such property, in accordance with subsection (d) of this section, with the municipality in which such property is located not later than fifteen days after absolute title vests in such person..

Conn. Gen. Stat. § 7-148ii(c).

"Registration Form 1," attached to the complaint as Exhibit B, was never filed. *Id*. at ¶ 38. That form is "[t]o be filed by the Plaintiff who commences an action to foreclose a mortgage on residential property" in accordance with Conn. Gen. Stat. § 7-148ii.[7] *Id*. at 27.

At the same time, Glass & Braus filed Notices of Lis Pendens, which were recorded in the Town of Weston's land records. *Id*. at ¶ 39. Attached to those notices were copies of Registration Form 2. *Id*. Although releases of the Notices of Lis Pendens were thereafter filed, the registration forms remain public records in the Clerk's office and in Weston's land records. *Id*.

### 2. *Procedural History*

Scheinman filed the instant action on September 14, 2018. The initial complaint set forth claims against Glass & Braus and Jessica Braus of Glass & Braus arising out of their debt collection activities. Compl., Doc. No. 1. Following my order granting the defendants' motion for a more definite statement, Scheinman filed an amended complaint. *See* Doc. Nos. 29, 39.

On August 26, 2019, Scheinman voluntarily withdrew all claims against Jessica Braus and filed a second amended complaint—the operative complaint—against Glass & Braus and SPS on August 30, 2019. *See* Doc. Nos 76, 77. That complaint asserts violations of: (1) the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*.; (2) the Connecticut

---

[7] Conn. Gen. Stat. § 7-148ii(a) provides:

> Any person who, on or after October 1, 2011, commences an action to foreclose a mortgage on residential property shall register such property with the town clerk of the municipality in which the property is located at the time and place of the recording of the notice of lis pendens as to the residential property being foreclosed in accordance with section 52-325. Such registration shall be maintained by the municipality separate and apart from the land records.

Conn. Gen. Stat. § 7-148ii(a).

Consumer Collection Agency Act ("CCAA"), Conn. Gen. Stat. § 36a-800 *et seq.*;[8] (3) the

Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42a-110 *et seq.*; and (4)

Conn. Gen. Stat. § 7-148ii, which is entitled "Registration and maintenance of foreclosed

property." Am. Compl., Doc. No. 77, at 1–2. The complaint also alleges slander of title, in

violation of Conn. Gen. Stat. § 47-33j, and requests monetary damages and injunctive relief. *Id.*

at 1–2, 4.

Glass & Braus now moves to dismiss the complaint in its entirety.

## III.    Discussion

### A.    <u>Fair Debt Collection Practices Act</u>

The Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, seeks to "eliminate

abusive debt collection practices by debt collectors, to insure that those debt collectors who

refrain from using abusive debt collection practices are not competitively disadvantaged, and to

promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C.

§ 1692(e). Because the statute is remedial in nature, courts in this circuit construe its provisions

liberally. *See Walters v. Performant Recovery, Inc.*, 124 F. Supp. 3d 75, 81 (D. Conn. 2015).

The Second Circuit evaluates FDCPA claims under an objective standard, measured from

the perspective of the "least sophisticated consumer." *See Gabriele v. Am. Home Mortg.*

*Servicing, Inc.,* 503 F. App'x 89, 94 (2d Cir. 2012). Lack of sophistication, however, is not to be

conflated with unreasonableness; the FDCPA "does not aid plaintiffs whose claims are based on

'bizarre or idiosyncratic interpretations of collection notices.'" *Ellis v. Solomon & Solomon,*

*P.C.,* 591 F.3d 130, 135 (2d Cir. 2010) (internal citations omitted).

---

[8] Although Scheinman identifies this statutory scheme as the "Consumer Practices Act," I refer to it throughout the opinion as the Connecticut Consumer Collection Agency Act, which is how courts in this district have referred to the statute. *See, e.g., Petrolito v. Arrow Fin. Servs., LLC*, 221 F.R.D. 303, 307 (D. Conn. 2004).

In his complaint, Scheinman advances claims under sections 1692d, 1692e, 1692f, and 1692g.  I address each claim in turn.[9]

1.  *Section 1692d*

Section 1692d prohibits conduct "the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  15 U.S.C. § 1692d.  It sets forth six non-exhaustive examples of harassing conduct:  (1) "[t]he use or threat of use of violence;" (2) "[t]he use of obscene or profane language;" (3) "[t]he publication of a list of consumers who allegedly refuse to pay debts;" (4) "[t]he advertisement for sale of any debt to coerce payment of the debt;" (5) "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously;" and (6) "the placement of telephone calls without meaningful disclosure of the caller's identity."  *See id.* § 1692d (1)-(6).  The section is intended "to protect debtors from oppressive and outrageous conduct, but not from every negative consequence of debt collection."  *Monahan v. NRA Grp. L.L.C.,* 2011 WL 3901877, at *2 (D. Conn. Sept. 6, 2011).

In this case, Scheinman appears to premise his section 1692d claim in part on Glass & Braus's service of process on June 24, 2018 and August 10, 2018, which he avers was "harassing."  Am. Compl., Doc. No. 77, at ¶ 27.  Scheinman, however, does not point to any authority that supports how such conduct rises to the level of harassment under section 1692d and, further, those actions differ in kind from the examples of statutorily proscribed conduct set forth above.  *See Garcia v. Law Offices Howard Lee Schiff P.C.*, 2017 WL 1230847, at *5 (D. Conn. Mar. 30, 2017) ("While the list is non-exclusive, the examples serve as a guide for the

---

[9] Although Glass & Braus argues in its motion that Scheinman's section 1692c claim fails, the complaint does not include a section 1692c claim and Scheinman does not assert otherwise in his opposition.  Accordingly, I need not decide whether Scheinman has stated a cognizable claim under that section.

Court in assessing the plausibility of Mr. Garcia's claims under Section 1692d"); *Lane v. Fein, Such & Crane, LLP*, 767 F. Supp. 2d 382, 390 (E.D.N.Y. 2011) (dismissing claims under Section 1692d when "none of the conduct alleged by the plaintiffs is similar in seriousness to any of the[] examples" in section 1692d).

Moreover, courts have held that service of process does not alone amount to actionable conduct under section 1692d. *See, e.g., Lane*, 767 F. Supp. 2d at 390 (holding that serving a state court complaint with an allegedly false statement was not harassing under section 1692d); *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 330–31 (6th Cir. 2006) ("Even when viewed from the perspective of an unsophisticated consumer, the filing of a debt-collection lawsuit without the immediate means of proving the debt does not have the natural consequence of harassing, abusing, or oppressing a debtor. *Any* attempt to collect a defaulted debt will be unwanted by a debtor . . . .") (emphasis in original). That two summonses rather than one were served over a period of time does not, without more, render that conduct violative of section 1692d, particularly because two actions do not reflect a pattern of conduct. *See Kinkade v. Estate Info. Servs., LLC,* 2012 WL 4511397, at *10 (E.D.N.Y. Sept. 28, 2012) ("§ 1692d claims typically involve a *pattern* of conduct") (emphasis in original).

To the extent Scheinman also rests his claim on the filing of the "fraudulent" Registration Form 2, or on Glass & Braus's assertion of other false or misleading statements, the claim still fails. That is because "[d]eception or falsehood alone . . . is wholly different from the conduct condemned" in section 1692d. *Kinkade v. Estate Info. Servs., LLC*, 2012 WL 4511397, at *9 (E.D.N.Y. Sept. 28, 2012) (internal citations omitted); *see also Garcia v. Law Offices Howard Lee Schiff P.C.,* 2017 WL 1230847, at *5 (D. Conn. Mar. 30, 2017) ("Mr. Garcia's allegations

about the allegedly misleading letter differ in kind from the six examples of harassing conduct that Congress provided in 1692d.").

Drawing all reasonable inferences in favor of Scheinman and viewing the allegations from the perspective of the least sophisticated debtor, Scheinman has failed to state a cognizable claim under section 1692d.

2.  *Section 1692e*

Section 1692e bars the "use of any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  The section includes a non-inclusive list of sixteen prohibited practices, such as:  (1) "[t]he false representation of . . . the character, amount, or legal status of any debt;" (2) "[t]he representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action;" and (3) "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken," *Id*.  It also includes a catch-all provision that prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *Id*.

A communication is considered "false, deceptive, or misleading" if it is "open to more than one reasonable interpretation, at least one of which is inaccurate."  *Garcia,* 401 F. Supp. 3d at 250 (internal citations omitted).  The threshold question is "whether the hypothetical least sophisticated consumer could reasonably interpret the representation in a way that is inaccurate." *Id*. (internal citations omitted).

The Second Circuit has read a materiality requirement into the FDCPA's prohibition of false, deceptive, or misleading practices in debt collection.  *Cohen v. Rosicki, Rosicki & Assocs.,*

9

*P.C.*, 897 F.3d 75, 85–86 (2d Cir. 2018).  That requirement "furthers the dual purposes of the least sophisticated consumer standard: the need to protect unsuspecting consumers from unscrupulous debt collectors and the need to ensure that debt collectors are not held liable for unreasonable misinterpretations of collection notice." *Id.* (citations and quotation marks omitted).

The statement in question must therefore be "materially false or misleading" in order to be actionable.  *Id*. at 85.  The gravamen of the materiality inquiry is whether the false statement would "frustrate a consumer's ability to intelligently choose his or her response." *Id*. at 86 (citation omitted).  That is, communications and practices are materially misleading if they "could mislead a putative-debtor as to the nature and legal status of the underlying debt" or if they "could impede a consumer's ability to respond to or dispute collection." *Id*.  By contrast, "mere technical falsehoods that mislead no one are immaterial and consequently not actionable" under section 1692d.  *Id*. (citations and quotation marks omitted).

In his complaint, Scheinman alleges that Glass & Braus asserted (1) a "false and deceptive demand for payment of monies;" (2) a "false representation of the legal status of claims having failed to disclose or not in possession of proof of such unpaid debt;" (3) "false [t]hreats of legal action;" and (4) "false facts respecting amounts, account status and character of debt."  Am. Compl., Doc. No. 77, at ¶ 36.  He also alleges that they filed "fictitious mortgage foreclosure legal actions" and engaged in "false means of attempting to collect." *Id*. at ¶¶ 36, 39.

Those broad assertions of misrepresentations, without further factual development, cannot give rise to a claim under section 1692e.  Because a complaint that presents legal conclusions couched as factual allegations cannot withstand a motion to dismiss, *Iqbal*, 556 U.S.

10

at 678, "it is not enough to allege that the complained-of statements were false," *Gargiulo v. Forster & Garbus Esqs.*, 651 F. Supp. 2d 188, 191 (S.D.N.Y. 2009).

To the extent Scheinman grounds his claim on Glass & Braus's representation that U.S. Bank was the owner of the debt, that SPS was U.S. Bank's mortgage servicer, or that Glass & Braus was retained by SPS, the complaint fails to set forth enough facts to raise a plausible suggestion that such assertions were false.[10]  *Id.* (noting that a plaintiff "must plead facts that, when taken as true, give rise to a plausible inference that the statements are false"). Accordingly, those allegations also do not lend support to Scheinman's section 1692e claim.

Glass & Braus's alleged representation that it was retained by U.S. Bank, when it was instead retained by SPS, a mortgage servicer, likewise cannot support Scheinman's claim, albeit for different reasons.  Although the complaint plausibly alleges that Glass & Braus was not technically a client of U.S. Bank, Scheinman has not adequately explained how that statement was false in a material respect.  Indeed, the complaint raises no plausible inference that such a statement could have misled the least sophisticated consumer about whom he or she should be paying or otherwise could have impeded a consumer's ability to respond to or dispute collection. *Cohen,* 897 F.3d at 86.  That is particularly so considering how Connecticut law allows both the holder of a note and a loan servicer for the holder to foreclose on real property.  *See Moorer v. U.S. Bank N.A.*, 2018 WL 587319, at *10 (D. Conn. Jan. 29, 2018) (quoting *J.E. Robert Co. v. Signature Properties, LLC*, 309 Conn. 307 (Conn. 2013)) ("[A] loan servicer for the owner and

---

[10] Scheinman's attempt to cure that defect in his opposition is unavailing.  In his brief, he avers that counsel for U.S. Bank swore in the ongoing state court foreclosure action that the owner of the debt is an entity named Remic Trust.  Opp. to Mot. to Dismiss, Doc. No. 99, at 3.  But in that same proceeding, the Superior Court, in denying Scheinman's motion to dismiss, rejected Scheinman's argument that U.S. Bank was not the holder of the mortgage, reasoning that U.S. Bank's exhibits established that the mortgage was assigned to U.S. Bank.  *See* Doc. No. 108.10, *U.S. Bank v. Scheinman*, Docket No. FBT-CV19-6086638-S (Conn. Super. Ct. May 31, 2019).  At any rate, that assertion is not included in his complaint and thus cannot buttress his claim.

holder of a note and mortgage [has] standing in its own right to institute a foreclosure action against the mortgagor.").

The filing of the partially filled-out Registration Form 2, however, reflects a cognizable violation of section 1692. The governing statute, Conn. Gen. Stat. § 7-148ii(c), and the guidance on the form itself make clear that the form is only to be completed when property is acquired through foreclosure, and "U.S. Bank" is written as the name of the registrant to whom title to the property at issue has been vested. *Id*. at 29. Moreover, copies of that form were allegedly attached to the Notices of Lis Pendens, which were recorded in the Town of Weston's land records. *See id.* at ¶ 39. Although releases of the lis pendens were thereafter filed, the registration forms remained public records in the Clerk's office and Weston's land records. *Id.*

Drawing all inferences in favor of Scheinman, those actions could reasonably have misled the least sophisticated consumer into believing that his or her property had been conveyed to U.S. Bank through foreclosure, which Scheinman maintains was not the case. *See* Am. Compl., Doc. No. 77, at ¶ 38 ("[N]o legal action in foreclosure affecting title to said real property was extant at any time whatsoever including the time of filing."). Because Glass & Braus could therefore have confused a debtor "as to the nature and legal status of the underlying debt," C*ohen,* 897 F.3d at 85–86 (2d Cir. 2018), Scheinman has stated a viable claim under section 1692e.

Glass & Braus's alleged failure to disclose in its communications that the claimed "debt will increase" also constitutes a colorable violation of section 1692e. Am. Compl., Doc. No. 77, at ¶ 36. The Second Circuit has held that the FDCPA obligates "debt collectors, when they notify consumers of their account balance, to disclose that the balance may increase due to interest and fees." *Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72, 76 (2d Cir. 2016). Out of

12

concern that this requirement could bring about more abusive practices, the Court adopted the "safe harbor" approach; it held that "a debt collector will not be subject to liability under Section 1692e for failing to disclose that the consumer's balance may increase due to interest and fees if the collection notice either accurately informs the consumer that the amount of the debt stated in the letter will increase over time, or clearly states that the holder of the debt will accept payment of the amount set forth in full satisfaction of the debt if payment is made by a specified date." *Id.* at 76–77.

Here, because Glass & Braus's initial communication with Scheinman noted the current balance without indicating whether that balance could increase with interest, and because the safe harbor does not appear applicable from the face of the complaint, Scheinman has stated a valid claim that the notice was misleading within the meaning of section 1692e.[11]

For the foregoing reasons, Scheinman's section 1692e claim—to the extent it rests on the filing of Registration Form 2 and the failure to disclose potential debt increases due to interest— is colorable and may proceed.

### 3. *Section 1692f*

Section 1692f broadly mandates that a debt collector "not use unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. § 1692f.  It enumerates eight non-exhaustive examples of actionable conduct, including:  (1) "[t]he collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law;" (2) "[t]he solicitation by a debt collector of any postdated check or other postdated

---

[11] Although the initial communication indicated that the current balance did not include the "costs of litigation, i.e., attorney's fees, title search, state marshal's fee," the Second Circuit expressly held that debt collectors are generally obligated to communicate that the "balance may increase due to interest *and* fees" when they notify consumers of their account balance.  *Avila*, 817 F.3d at 76 (emphasis added).

payment instrument for the purpose of threatening or instituting criminal prosecution;" and (3) "[c]ausing charges to be made to any person for communications by concealment of the true purpose of the communication." *Id*.

In *Cicalo v. Hunt Leibert Jacobson, P.C.,* I dismissed a section 1692f claim on the ground that the complaint did not tie "specific factual allegation" to that claim. 2017 WL 101302, at *3 (D. Conn. Jan. 10, 2017); *accord Ghulyani v. Stephens & Michaels Assocs., Inc.,* 2015 WL 6503849, at *2 (S.D.N.Y. Oct. 26, 2015) ("Where the allegations do not identify any misconduct beyond that which plaintiff asserts violates other provisions of the FDCPA, [a] plaintiff has not stated a claim for relief under section 1692f.") (citations omitted). Scheinman's complaint suffers from that same fatal defect; it fails to articulate any separate allegations in support of his section 1692f claim and instead groups the 1692f claim together with the section 1692d and section 1692e claims. For that reason, Scheinman's section 1692f claim falls short and is dismissed.

Scheinman raises a new argument in support of his section 1692f claim in his opposition; he appears to contend that Glass & Braus failed to provide notice before initiating the foreclosure in accordance with Conn. Gen. Stat. § 8-265ee and thus had no lawful authority to collect the debt, thereby violating section 1692f(1). *See* Opp. to Mot. to Dismiss, Doc. No. 99, at 3. The Second Circuit, however, has held that "violations of state and local debt collection statutes are not per se actionable under the FDCPA." *Gallego v. Northland Grp. Inc.,* 814 F.3d 123, 127 (2d Cir. 2016) (noting also that "there is no indication that Congress intended [section 1692f] to incorporate state- or local-law standards of conduct"). And here, because Scheinman has not explained how the alleged state law violation reflected an "unfair or unconceivable" means to collect a debt under section 1692f, the argument does not aid his case.

4.   *Section 1692(g)(a)*

Section 1692(g)(a) provides that, "within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a).

In this case, the complaint alleges that Glass & Braus violated section 1692g(a) by failing to "recite the debt and owner/creditor of the debt." *See* Am. Compl., Doc. No. 77, at ¶ 34.  That bare allegation, however, is flatly contradicted by the June 24, 2018 letter appended to the complaint, which recites (1) the amount of the debt as of June 12, 2018 ($624,827.20) and (2) the name of the creditor to whom the debt is owed (U.S. Bank).  Accordingly, Scheinman has failed to plausibly state a claim for relief under section 1692g(a).

5.   *Section 1692g(b)*

Subsection b of section 1692g reads, in relevant part:

>If the consumer notifies the debt collector in writing within the thirty-day period
>described in subsection (a) that the debt . . . is disputed, or that the consumer requests the
>name and address of the original creditor, the debt collector shall cease collection of the
>debt . . . until the debt collector obtains verification of the debt or a copy of a judgment,
>or the name and address of the original creditor, and a copy of such verification or
>judgment, or name and address of the original creditor, is mailed to the consumer by the
>debt collector. Collection activities and communications that do not otherwise violate this
>subchapter may continue during the 30-day period referred to in subsection (a) unless the
>consumer has notified the debt collector in writing that the debt, or any portion of the
>debt, is disputed or that the consumer requests the name and address of the original
>creditor.

15 U.S.C. § 1692g(b).

It continues that, "[a]ny collection activities and communication during the 30-day period

may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the

debt or request the name and address of the original creditor." *Id*.

Here, the complaint alleges that Glass & Braus violated section 1692g(b) by engaging in

collection activities without providing a "compliant response" to Scheinman's demands for

"validation and verification" after he disputed the debt. *See* Am. Compl., Doc. No. 77, at ¶¶ 19,

20, 22. That conclusory allegation, without further factual support, falls short of stating a

plausible claim. *Iqbal*, 556 U.S. at 679.

To the extent Scheinman premises his section 1692g(b) claim on Glass & Braus's refusal

to furnish evidence demonstrating that it was retained by SPS or U.S. Bank, or that SPS was an

authorized mortgage servicer, the claim still fails because Scheinman demands more than what is

statutorily required. District courts within the Second Circuit have consistently held that

"verification . . . does not require the debt collector to do anything more than confirm the amount

of the debt and the identity of the creditor, and relay that information to the consumer."

*ValleCastro v. Tobin*, 2015 WL 6478412, at *9 (D. Conn. Oct. 27, 2015) (citation omitted)

(collecting cases). Whether or not debt collectors have supplied documentation proving their

entitlement to collect the debt is therefore not relevant to the inquiry at hand.  As the Eastern

District of New York has explained:

> to the degree the Plaintiff believes that Defendants have not established their entitlement
> to collect the Debt, she is free to assert that position as a defense to their collection efforts
> in the State Action. In that forum, the Plaintiff's argument concerning the quantum of
> proof required to "remind" her of this Debt may prove more effective. However, on a
> motion to dismiss under Rule 12(b)(6) in an FDCPA case, the inquiry is far different, and
> the Plaintiff has fallen short of plausibly alleging that the Defendants violated § 1692g(b)
> of the FDCPA.

*Ritter v. Cohen & Slamowitz, LLP*, 118 F. Supp. 3d 497, 504 (E.D.N.Y. 2015).

Finally, the complaint is bereft of any specific facts that would support a claim that the

service of process overshadowed or was at odds with the validation notice.  Although Scheinman

avers that the collection letters were "deceitfully imbedded into the legal process documents,"

doc. no. 77, at ¶ 21, that allegation is not enough to state a claim.  The complaint does not allege,

for instance, that Glass & Braus failed to explain that the commencement of the lawsuit had no

impact on the disclosures made in the validation notice.  *Ellis v. Solomon & Solomon, P.C.,* 591

F.3d 130, 136 (2d Cir. 2010) (holding that "the validation notice is overshadowed where a debt

collector serves a consumer with process initiating a lawsuit during the validation period, without

clarifying that commencement of the lawsuit has no effect on the information conveyed in the

validation notice").

For those reasons, Scheinman has failed to plead a valid claim under 1692g(a).

6.  *Connecticut Unfair Trade Practices Act*

Turning to Scheinman's state law claims, the complaint alleges that Glass & Braus

violated CUTPA, Conn. Gen. Stat. § 42a-110 *et seq*., by effecting "fictitious" service of process

twice.  Am. Compl., Doc. No. 77, at ¶ 55.  That claim, too, cannot survive Glass & Braus's

motion to dismiss.

CUTPA declares that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a). "Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action" to recover actual damages, punitive damages, and equitable relief. *Id*. § 42-110g.

To prevail on a CUTPA claim, a plaintiff must therefore establish that "he or she suffered ascertainable loss of money or property, real or personal as a result of the conduct prohibited by the Act." *Gervais v. Riddle & Assocs., P.C.*, 479 F. Supp. 2d 270, 279 (D. Conn. 2007) (internal citations and quotation marks omitted). An ascertainable loss has been construed as "a loss that is capable of being discovered, observed or established" and is "synonymous with deprivation, detriment and injury." *ZeeBaaS, LLC v. Koelewyn*, 2012 WL 2327693, at *6 (D. Conn. June 19, 2012) (citing *Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.,* 287 Conn. 208, 218 (2008)). Although the loss must be "measurable," a plaintiff need not "prove actual damages of a specific dollar amount" in order to establish an ascertainable loss. *Id*.

In this case, the complaint does not plead any allegations giving rise to a plausible inference that Scheinman suffered a loss as a result of the service of process, much less an ascertainable loss. *See Gervais v. Riddle & Assocs., P.C.,* 479 F. Supp. 2d 270, 279 (D. Conn. 2007) ("courts in this district have consistently held that false communications from a debt collector alone, without further damage to a plaintiff, are insufficient to constitute ascertainable loss") (collecting cases). For that reason, the complaint fails to state a CUTPA claim.

7.   *Connecticut Consumer Collection Agency Act*

Scheinman also alleges that Glass & Braus violated the Connecticut Consumer Collection Agency Act (the "CCAA"), Conn. Gen. Stat. 36-a-800 *et seq.*  It is well-settled, however, that no private right of action exists under the CCAA and that enforcement lies with the Banking Commissioner.  *See, e.g., Gaetano v. Payco of Wisconsin, Inc.,* 774 F. Supp. 1404, 1414 (D. Conn. 1990); *Lemire v. Wolpoff & Abramson, LLP*, 256 F.R.D. 321, 323 (D. Conn. 2009).

Scheinman relies on *Larobina v. Wells Fargo Bank, N.A.,* 2012 WL 1032953 (D. Conn. Mar. 27, 2012), and *Davis v. Hunt Leibert Jacobson, P.C.,* 2014 WL 5798585 (D. Conn. Nov. 7, 2014), for the proposition that the CCAA creates a private right of action.  That reliance is misplaced; those cases addressed the Creditors' Collection Practices Act ("CCPA"), Conn. Gen. Stat. § 36a–646, which does not apply here because Scheinman does not allege that Glass & Braus is a creditor.  *Dina v. Cuda & Assocs.,* 950 F. Supp. 2d 396, 406 (D. Conn. 2013) (noting that the CCPA applies to creditors).  Accordingly, Scheinman's claim under the CCAA is not cognizable.

8.   *Conn. Gen. Stat. § 7-148ii*

To the extent the complaint asserts a claim under section 7-148ii, that claim fails for the same reason as the CCAA claim: there is no private right of action.

Section 7-148ii articulates requirements for registering a property that is the subject of a foreclosure action with the Town Clerk.  In particular, it provides that, "[a]ny plaintiff in a foreclosure action who fails to register in accordance with this section shall be subject to a civil penalty of one hundred dollars for each violation, up to a maximum of five thousand dollars."  Conn. Gen. Stat. § 7-148ii(h).  It further states that, "*[a]n authorized official of the municipality*

may file a civil action in Superior Court to collect the penalties imposed" pursuant to subsection h.  *Id*. § 7-148ii(j) (emphasis added).

The Connecticut Supreme Court has held that, unless private enforcement is expressly authorized in a statute, there is a presumption in Connecticut that private enforcement does not exist.  *See Provencher v. Town of Enfield*, 284 Conn. 772, 777 (2007).  The burden is on the plaintiff to overcome that presumption and show that the statute creates an implied right of action.  *Id*. at 777–78.

Here, the statute does not reference a private right of action and Scheinman has alleged no facts suggesting that a private right of action was intended.  On the contrary, the statute makes clear that municipal officers, rather than private individuals, are charged with enforcement.  For those reasons, I conclude that section 7-148ii does not provide an express or implied private right of action; Scheinman's claim therefore fails.

9.  *Slander of Title*

The complaint further alleges that the filing of Registration Form 2 by Glass & Braus with the Town Clerk amounted to slander of title, in violation of Conn. Gen. Stat. § 42-33j, *et seq*.  Am. Compl., Doc. No. 77, at ¶¶ 38–45.

"[S]lander of title is a tort whereby the plaintiff's claim of title to land or other property is disparaged by a letter, caveat, mortgage, lien, or some other written instrument."  *Peterson v. Wells Fargo Trustee,* 2016 WL 5420565, at *4 (D. Conn. Sept. 27, 2016), *aff'd sub nom*. Peterson v. Wells Fargo Tr., 721 F. App'x 13 (2d Cir. 2018) (quoting *Bellemare v. Wachovia Mortg. Corp*., 284 Conn. 193, 202 (2007) (emphasis removed)).  The tort, originally available at common law, has been codified by section 47-33j, which prohibits the "use [of] the privilege of recording notices . . . for the purpose of slandering the title to land," and awards the

plaintiff damages and costs "if the court finds that any person has recorded a claim for that purpose only." *Id*. (quoting Conn. Gen. Stat. § 47-33j (2016)).

The elements of slander are "[a] the uttering or publication of a false statement [b] derogatory to the plaintiff's title, [c] with malice, [d] causing special damages as a result of diminished value of the plaintiff's property in the eyes of third parties." *Id*. (quoting *Elm City Builders v. Enterprise Condo. Ass'n*, 63 Conn. App. 657, 669 (2001)). "Pecuniary damages must be shown in order to prevail on such a claim." *Id*. (quoting *Elm City Builders*, 63 Conn. App. at 669-70).

In its motion, Glass & Braus contends that Scheinman has failed to adequately plead malice or special damages. For the reasons below, I agree in part.

 a.   Actual Malice

Malice is generally established by "presenting evidence of the defendant's statements, acts, and the surrounding circumstances from which an inference of malice may be drawn." *Id*. at *6 (citation omitted). In Connecticut, courts have stated that "actual malice requires a showing that a statement was made with knowledge that it was false or with reckless disregard for its truth." *Fountain Pointe, LLC v. Calpitano*, 144 Conn. App. 624, 655 (2013) (citation omitted). "[P]roof that a defamatory falsehood has been uttered with bad or corrupt motive or with an intent to inflict harm will not be sufficient to support a finding of actual malice . . . although such evidence may assist in drawing an inference of knowledge or reckless disregard of falsity." *Id*.

Here, the complaint plausibly supports the existence of malice. Registration Form 2 clearly instructs that the form is to be filed when property is acquired through foreclosure, and the complaint sufficiently alleges that foreclosure litigation had not even commenced at the time

the form was filed.  Drawing all inferences in Scheinman's favor, the complaint sufficiently

alleges that Glass & Braus was directly involved in debt collection at the time and had made the

decision not to file the complaint and summons that it previously served on Scheinman.

Scheinman has therefore adequately established that Glass & Braus had actual knowledge that a

foreclosure lawsuit was not ongoing at the relevant time and that the statements in the form were

false.  Moreover, the complaint raises the plausible inference that Glass & Braus knew the filing

of that form was erroneous, particularly because Glass & Braus is an experienced debt collector

in Connecticut and thus was presumably familiar with the state's foreclosure registration

regulations.  *See* Doc. No. 77, at ¶ 16.

   For those reasons, the complaint sufficiently alleges malice on the part of Glass & Braus.

   b. Special Damages

   A plaintiff alleging a slander of title claim must plead that he or she suffered special

damages as a result of the defendant's statements disparaging the plaintiff's title to or interest in

real property.  *Peterson,* 2016 WL 5420565, at *7.  Accordingly, even if the other elements of

false publication, derogation of title, and malice are all present, a *prima facie* case of slander of

title cannot be made without evidence of special damages.  *Id.*  Moreover, under the Federal

Rules of Civil Procedure, special damages must be pled with specificity.  *See* FED. R. CIV. P. 9(g)

("If an item of special damage is claimed, it must be specifically stated."); *Mortg. Resolution*

*Servicing, LLC v. JPMorgan Chase Bank*, 2017 WL 570929, at *4 (S.D.N.Y. Feb. 13, 2017)

(applying Rule 9(g) to a slander of title claim brought under New York law); *Rutty v. Krimko*,

2018 WL 1582290, at *3 (E.D.N.Y. Mar. 30, 2018) (same).

   The Connecticut Appellate Court has observed that, "a clouded title, alone, does not

constitute damages per se. Rather, a plaintiff must present evidence of how the clouded title

resulted in some pecuniary loss." *Gilbert v. Beaver Dam Ass'n of Stratford Inc.,* 85 Conn. App. 663, 673 (2004). "Pecuniary injuries" are those that "can be, and usually are, without difficulty estimated by a money standard," such as "[l]oss of real or personal property, or of its use, loss of time, and loss of services." *Id.* at 674. "Non-pecuniary injuries"—which do not suffice for a slander of title claim—"are those for the measurement of which no money standard is or can be applicable," such as "[b]odily and mental pain and suffering." *Id.*

In the complaint, Scheinman alleges that the improper filings decreased the marketable value of the property to zero. *See* Am. Compl., Doc. No. 77, at ¶ 44. He also avers that, at trial, he will provide an estimate of the price at which a "willing [] seller" would have sold the property to a "willing buyer" if the "malicious representation, disparagement[,] and slander of title did not exist." *Id.* at ¶ 47. He posits that the estimated price is currently $850,000. *Id.*

In an addendum to its motion to dismiss, Glass & Braus highlights a decision issued in the ongoing foreclosure proceeding, which denied Scheinman's motion for sanctions. In that motion, Scheinman argued that sanctions were warranted because U.S. Bank and its counsel maliciously filed a Registration Form 2 with the Town Clerk. *See* Doc. No. 112, at 9–10. Specifically, Scheinman argued that the filing of the form was in "deliberate violation of regulations respecting municipality foreclosure registration," constituted slander, and caused his property to be unmarketable. *See id.* at 6, 9–10.

The court rejected Scheinman's arguments that the filing was slanderous and rendered his property unmarketable. *Id.* at 16–17. In so concluding, the court reasoned:

> the document is not an instrument that conveys title. The Plaintiff did not record a Certificate of Foreclosure. A Form 2 may have been provided to the Town Clerk in error, however, there was no harm to the defendant. Title is evidenced on the land records, and there is no evidence that any individual ever relied on the Form 2 as a conveyance of title. The purpose

23

> of the Form is to provide a contact number for a responsible party if the
> property becomes blighted – not to convey title.

*Id*.

That ruling, however, is not dispositive to my analysis, principally because the motion

was not a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), as

here.  Although the court concluded that the evidence did not support Scheinman's contention

that the filing reduced his property's marketability, at this early junction I generally cannot

consider extrinsic evidence and must accept the factual matter set forth in his complaint as true.

*Twombly*, 550 U.S. at 556.

Nonetheless, even accepting Scheinman's factual allegations as true, I conclude that they

fail to give rise to a plausible inference that he suffered pecuniary loss due to the filing of

Registration Form 2 or due to any of Defendants' other actions.  The jurisprudence indicates that,

to plead special damages under Connecticut law, a plaintiff must at a minimum allege that he or

she either attempted to sell the property or had an appraisal conducted on the property following

the allegedly slanderous acts.  *See Peterson*, 2016 WL 5420565, at *7 (concluding that the

plaintiff failed to proffer any evidence of special pecuniary damages, emphasizing that the

plaintiff "testified at her deposition that she had no intention of selling her property and that she

did not have any appraisals done on the property during the time period in question"); *Jepsen v.*

*Camassar*, 181 Conn. App. 492, 532–33 (2018) (holding that the trial court properly rendered

judgment in favor of the defendants on the slander of title claims, partly because the evidence at

trial indicated that the plaintiffs never "attempted to sell or rent their property or have a

comparative market analysis performed"); *cf. Fountain Pointe, LLC v. Calpitano*, 144 Conn.

App. 624, 628, 656–58 (affirming trial court's conclusion that the defendants committed slander

of title when the evidence established that their actions "caused the plaintiff to lose out on the proceeds of a $1.8 million sale of its property").[12]

Scheinman has failed to allege either of those events in his complaint with the necessary specificity.  His assertions that the sales price of the property would be approximately $850,000 if not for Glass & Braus's actions, and that Glass & Braus decreased the marketable value of the property to zero, amount to nothing more than speculation and therefore do not support his special damages claim.  *Jepsen*, 181 Conn. App. at 511 ("Speculation and conjecture do not suffice for proof of pecuniary loss.").

At bottom, the complaint merely alleges in conclusory fashion that Glass & Braus clouded title to the property, which is insufficient.  *Gilbert*, 85 Conn. App. at 673.  For that reason, Scheinman has failed to state a viable claim for slander of title.

### 10. *Abuse of Process & Malicious Prosecution*

Although Scheinman references the terms "abuse of process" and "malicious prosecution" sporadically throughout the complaint, it is not clear from the complaint or opposition whether he intends to bring independent causes of action premised on those legal theories.  I nonetheless address those claims below, which are easily disposed of.

Under Connecticut law, "[a]n action for abuse of process lies against any person using a legal process against another in an improper manner or to accomplish a purpose for which it was not designed."  *See Passaro-Henry v. Allstate Ins. Co.*, 2010 WL 5174405, at *3 (D. Conn. Dec.

---

[12] Other jurisdictions have adopted a narrower view of the special damages requirement, holding that a plaintiff must at least allege that the property was for sale.  *See, e.g., Davis v. Countrywide Home Loans, Inc*., 1 F. Supp. 3d 638, 646 (S.D. Tex. 2014) (granting summary judgment in favor of the defendants on a slander of title claim when the plaintiff did not allege that he "lost a specific sale of his home") (applying Texas law); *Knowles v. Bank of Am., N.A.,* 2012 WL 5882570, at *5 (D. Colo. Nov. 21, 2012) (dismissing slander of title claim when the plaintiffs "did not allege any facts suggesting that their house was on the market for sale," observing that, "[a]t a minimum, the property must be on the market for sale, and the tort must create a cloud upon the title") (internal citations omitted) (applying Colorado law).

15, 2010) (citation omitted).  "Abuse of process requires conduct (1) occurring after the issuance

of process and (2) intended *primarily* to accomplish a purpose for which the process is not

designed." *Id*. (emphasis in original).  "[C]onduct after the issuance of process is an essential

element of abuse of process." *Id*.

The instant complaint, in relevant part, focuses on the propriety of the service of the

summons and complaint; it proffers no allegations suggesting misuse of legal process after such

service.  Significantly, Scheinman alleges that the complaint and summons were never filed with

the court.  *See* Doc. No. 77, at ¶¶ 19, 20.  Accordingly, that claim, to the extent it is advanced,

cannot stand.

Any malicious prosecution claim fails as well.  "To prevail on a malicious prosecution

claim under Connecticut law, a plaintiff must prove the following elements: (1) the defendant

initiated or continued criminal proceedings against the plaintiff; (2) the criminal proceeding

terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the

defendant acted with malice."  *Roberts v. Babkiewicz*, 582 F.3d 418, 420 (2d Cir. 2009) (internal

citations and quotation marks here).  Here, because the complaint does not allege that Glass &

Braus initiated or continued criminal proceedings, that claim, too, is not viable.

## IV.    Conclusion

For the foregoing reasons, the motion to dismiss is **granted** in part and **denied** in part.

The slander of title, abuse of process, and malicious prosecution claims are dismissed, as are the

claims brought under sections 1692d, 1692f, 1692g, CUPTA, CCAA, and section 7-148ii.  The

section 1692e claim is colorable and may proceed.

So ordered.

Dated at Bridgeport, Connecticut, this 23rd day of November 2020.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge